IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. RICHARD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHRIZ P. RICHARD, APPELLANT.

Filed September 13, 2022.    No. A-21-886.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Jonathan Braaten, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, RIEDMANN, and WELCH, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Chriz P. Richard appeals his felony convictions and sentences arising out of a robbery that occurred on February 13, 2019. He challenges the sufficiency of the evidence for certain offenses and the length of his sentences. He further alleges that his trial counsel was ineffective. We affirm.

## BACKGROUND

On the evening of February 13, 2019, Hasan Tran was with a friend when they arranged a purchase of marijuana. Tran's friend drove Tran's vehicle to a location in Lincoln, Nebraska, and parked on the street. Two men approached and got into the backseat. According to Tran, both men pulled out firearms and demanded that Tran give them his property, forcibly taking his cell phone and money. Then, according to Tran, the men exited the vehicle, and the man who had been seated behind the passenger seat approached the passenger side window with the firearm still in his hand,

- 1 -

looking for additional property. Once Tran and his friend got away, they went to a gas station where they encountered Lincoln police officers and reported the robbery.

While investigating the robbery, police discovered that the marijuana transaction had been arranged through social media, and they linked the messages to an account associated with Richard. Police responded to an apartment complex looking for Richard but were unable to locate him, so they set up surveillance to keep watch on the apartments. Later that evening, they observed Richard exit one of the apartments wearing a red backpack. The police investigators exited the vehicle from which they had been conducting surveillance and followed Richard, attempting to make contact with him at the corner of the apartment complex. When they called Richard's name, he looked at them and then immediately took off running. Two investigators chased Richard in different directions in an effort to cut him off, and one of them observed Richard drop the backpack before jumping over a fence. Inside the backpack, police located two bags of marijuana and two handguns. Richard was ultimately taken into custody.

The State charged Richard with five felonies: count I, possession of marijuana with intent to deliver; count II, possession of a firearm during the commission of a felony; count III, possession of a stolen firearm; count IV, robbery; and count V, use of a firearm to commit a felony. The matter proceeded to a jury trial. Tran testified, describing the robbery as detailed above, and the police officers involved in the investigation and Richard's arrest also testified. The evidence additionally established that a partial palm print found on the outside of the passenger side of Tran's vehicle was matched to Richard.

Richard testified in his own defense. He admitted that he agreed to meet with Tran, but he claimed that he was purchasing marijuana from Tran, rather than selling it to Tran. He acknowledged approaching Tran's vehicle and claimed that Tran asked him to come to the passenger side window, resulting in his palm print on the outside of the vehicle. According to Richard, he then grabbed the marijuana, small plastic baggies, and scale that Tran was holding and took off running. He denied getting into the vehicle or having a gun with him at the time. He admitted to owning the guns that were found in the red backpack, but claimed they remained in the apartment at the time he met with Tran. He testified that he purchased the guns and was unaware that one of them was stolen.

The jury acquitted Richard of count III, possession of a stolen firearm, but found him guilty of the remaining four charges. He was sentenced to consecutive terms of imprisonment of 2 to 3 years for count I, 1 to 2 years for count II, 4 to 5 years for count IV, and 5 to 6 years for count V. Richard timely appeals.

## ASSIGNMENTS OF ERROR

Richard assigns, restated and renumbered, that the district court erred in (1) finding sufficient evidence to sustain the convictions for use of a firearm to commit a felony and possession of a firearm during the commission of a felony, and (2) imposing excessive sentences. He also assigns that his trial counsel was ineffective in his general trial strategy.

## STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate

court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019).

Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Grant*, 310 Neb. 700, 968 N.W.2d 837 (2022). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id*.

ANALYSIS

*Sufficiency of Evidence.*

Richard assigns that the evidence presented at trial was insufficient to prove that he used a firearm to commit the robbery and that therefore, the district court erred in sustaining the convictions for use of a firearm to commit a felony and possession of a firearm during the commission of a felony. We disagree.

These offenses are contained in the same statute, which provides in relevant part:

(1)(a) Any person who uses a firearm . . . to commit any felony which may be prosecuted in a court of this state commits the offense of use of a deadly weapon to commit a felony.

. . . .

(2)(a) Any person who possesses a firearm . . . during the commission of any felony which may be prosecuted in a court of this state commits the offense of possession of a deadly weapon during the commission of a felony.

. . . .

(4) Possession of a deadly weapon may be proved through evidence demonstrating either actual or constructive possession of a firearm . . . during, immediately prior to, or immediately after the commission of a felony.

(5) For purposes of this section:

. . . .

(b) Use of a deadly weapon includes the discharge, employment, or visible display of any part of a firearm . . . during, immediately prior to, or immediately after the commission of a felony. . . .

Neb. Rev. Stat. § 28-1205 (Reissue 2016). Richard's sole argument is that there was no concrete evidence proving that he used a firearm during the robbery, because Tran offered conflicting versions of the events. To support this argument, Richard contrasts statements Tran originally gave as reflected in the presentence investigation report to testimony Tran gave at trial. However, the jury did not receive the information contained within the presentence investigation report; it had only the testimony Tran offered at trial from which to determine whether Richard used a firearm during the robbery. One of the police officers who investigated the robbery admitted at trial that although Tran changed certain details of the events at least once during the investigation, Tran was

always consistent with the fact that both men entered the backseat of his vehicle and brandished guns.

During Richard's own testimony, he admitted that he approached Tran's vehicle for the purpose of a marijuana transaction and that he owned both guns found in the backpack. But he denied having them in his possession when he was with Tran, instead claiming that the guns, and the backpack, remained inside the apartment. On the other hand, Tran testified that Richard and his associate both pulled out guns after getting into the backseat of his vehicle and robbed him of his cell phone and money. Additionally, according to Tran, Richard got out of the backseat and approached the passenger side window with the gun still in his hand, demanding more property. A partial palm print found on the outside of the passenger side of Tran's vehicle was matched to Richard. The jury was presented with the conflicts in the evidence and found Tran's version of events to be more credible than Richard's. On appeal, we do not reweigh the jury's credibility determination. See *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). Tran's testimony supports a finding that Richard actually possessed and visibly displayed a firearm during the commission of a robbery. The evidence was therefore sufficient to sustain the convictions of both firearm offenses.

*Excessive Sentences.*

Richard assigns that the district court abused its discretion in imposing excessive sentences. He does not allege that the sentences fall outside the statutory limits; rather, he argues that the court failed to properly consider certain mitigating factors. We find no abuse of discretion in the sentences imposed.

Possession of marijuana with intent to deliver is a Class IIA felony, punishable by up to 20 years' imprisonment. Neb. Rev. Stat. §§ 28-416 & 28-105 (Cum. Supp. 2020). Richard received a sentence of 2 to 3 years. Possession of a firearm during the commission of a felony and robbery are each Class II felonies. Neb. Rev. Stat. § 28-324 (Reissue 2016); § 28-1205(2)(c). Class II felonies carry a sentencing range of 1 to 50 years' imprisonment. § 28-105. Richard was sentenced to 1 to 2 years for the firearm charge and 4 to 5 years for robbery. Use of a firearm to commit a felony is a Class IC felony, which has a mandatory minimum sentence of 5 years up to a maximum of 50 years' imprisonment. §§ 1205(1)(c) & 28-105. Richard received a sentence of 5 to 6 years. Therefore, his sentences are all within the statutory limits, and we review them for an abuse of discretion.

In reviewing whether an abuse of discretion occurred during sentencing, an appellate court determines whether the sentencing court considered and applied the well-established factors and any applicable legal principles in determining the sentence to be imposed. *State v. Grant*, 310 Neb. 700, 968 N.W.2d 837 (2022). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id*. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Richard was 21 years old at the time of sentencing. His criminal history includes a juvenile offense for a harassment charge, for which he reportedly successfully completed probation, and adult convictions for attempted burglary in Lancaster County and first degree burglary in Iowa. In October 2019, he was sentenced to a term of 20 months' incarceration for the attempted burglary charge and was released for 18 months' post-release supervision in January 2020. From January until June, he was sanctioned four times for violating the terms of his post-release supervision. He stopped maintaining contact with probation in June and began missing drug tests. In July, the State moved to revoke his post-release supervision, and thereafter, a warrant was issued for his arrest for failing to appear in court related to the attempted revocation. Thereafter, he was sentenced to 98 days in jail for the Iowa burglary charge and released in May 2021. At the time of his release, he still had 255 days remaining of his post-release supervision term. Presentence testing found that he was a very high risk to reoffend.

Richard reported that he was removed from his parents' custody at the age of 5 and was in foster care until he ran from his placement when he was 17 years old. At the time of his arrest in this case, he did not have stable housing and was unemployed with no real employment history. When asked during the presentence interview where he would live if he were to be released, he indicated possibly returning to Iowa to stay with family members.

The district court made clear at sentencing that it considered the information contained in the presentence report. The court recognized Richard's young age, but it also observed that these were serious felony offenses involving weapons and noted the fact that he has had a difficult time following the law, including his poor performance during post-release supervision. Thus, the court found that the risk was nearly certain that during any period of probation, Richard would engage in additional criminal conduct, as he has shown in the past. There is no indication that the court did not meaningfully consider any mitigating factors contained in the record, including those Richard highlighted at sentencing and here on appeal. Therefore, we cannot find that the sentences imposed constitute an abuse of discretion.

*Ineffective Assistance of Counsel.*

Richard assigns that his trial counsel "was ineffective in the general trial strategy." Brief for appellant at 7. In the argument section of his brief, Richard set forth his general disagreement with the trial strategy his trial counsel utilized and asserted that he was preserving the issue for potential postconviction relief.

Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). The necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before an appellate court. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022).

In *State v. Mrza, supra*, the Nebraska Supreme Court found that an error assigning that trial counsel was ineffective in "'[f]ail[ing] to adequately investigate [the defendant's] defenses'"

lacked the specificity we demand on direct appeal. *Id*. at 935, 926 N.W.2d at 86. The same is true here. Richard's assignment of error does not specifically allege which aspects of trial counsel's strategy were deficient or in what manner. We therefore will not consider this assignment of error.

## CONCLUSION

We find the evidence presented at trial sufficient to sustain the convictions for the firearm charges and find no abuse of discretion in the sentences imposed. Because the assigned error relating to ineffective assistance of counsel lacked the necessary specificity, we do not address it. The convictions and sentences are therefore affirmed.

AFFIRMED.